UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CHARLES ESPOSITO,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     12-CV-2337(JS)(SIL)

PATRICK R. DONAHOE, Postmaster
General,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:     Charles Esposito, pro se
                   482 Patricia Court
                   Oakdale, NY 11769

For Defendant:     Diane C. Leonardo-Beckmann, Esq.
                   United States Attorney's Office
                   610 Federal Plaza
                   Central Islip, NY 11722


SEYBERT, District Judge:

          Pro  se  plaintiff  Charles  Esposito  ("Plaintiff")

commenced this action on May 9, 2012, asserting a claim under the

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.[1]  Currently

before the Court is the motion for summary judgment of defendant

Patrick  Donahoe,  Postmaster  General  ("Defendant").    For  the

_____

[1] Plaintiff's Complaint, submitted on the Court's employment
discrimination complaint form, reflects that Plaintiff has
checked the box for disability discrimination under the
Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et
seq.  However, given that the defendant is the United States
Postmaster General, Plaintiff's claim arises under the
Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., so the
Court construes the Complaint as such.

following reasons, Defendant's motion (Docket Entry 26) is GRANTED.

<u>BACKGROUND</u>[2]

Plaintiff was employed as a clerk at the United States Post Office plaint in Melville, NY. (Def.'s 56.1 Stmt., Docket Entry 21-1, ¶ 1.) He held that position since 1997, and his principal duty was sorting mail. (Leonardo Decl., Docket Entry 33, Pl.'s Dep. (Ex. A), Docket Entry 33-1, at 9:3-14.)

On October 25, 2005, Plaintiff suffered a cervical injury at work that resulted in his being out of work for roughly five months returning to work in March 2006. (Pl.'s Dep. 11:18-12:10, 18:18-11.) He asked his doctor, Dr. Savella, if he could return to work and he said "[yes], but under restrictions." (Pl.'s Dep. 19:5-12.) The doctor recommended that he should not lift heavy objects, bend, twist, or stand for a long period of time, or reach above his head. (Pl.'s Dep Tr. at 20:17-20.)

Plaintiff testified that around the time of his injury, he was told by George Cascetti, a supervisor at the plant, that he was being "targeted," and that Plaintiff was a "marked man." (Pl.'s Dep. 12:8-17.) Plaintiff speculates that superiors in the office began targeting him because he "wouldn't let them intimidate

---

[2] The following facts are drawn from the parties' Local Rule 56.1 Statements, their evidence in support, and the Court's independent review of the record.

[him]."  (Pl.'s Dep. 15:5-8.)  Plaintiff explains that this targeting took multiple forms.  For example, he alleges that upon his return from leave in March 2006, he was put in a position that violated his medical restrictions.  (Pl.'s Dep. 23:14-19.)  Later, in 2007 as part of an office-wide "tour compression" (Pl.'s Dep. 26:5-9), Plaintiff's normal hours were changed so that he was routinely scheduled for an overnight shift (Pl.'s Dep. 31:11-13).  At no point did Plaintiff notify his employer that he was put into a position where he felt compelled to violate his medical restrictions, (Pl.'s Dep. 24:7-14, 25:5-8), and Plaintiff was not medically prohibited from working the overnight shift (Pl.'s Dep. 23:6-9).

Over the next few years, Plaintiff made at least six requests for leave pursuant to the Family Medical Leave Act.  In 2005, Plaintiff requested FLMA leave, but failed to provide the required documentation, and his request was therefore denied.  (Sanabria Decl., Docket Entry 30, Ex. F.[3])  In 2006, Plaintiff sent a letter concerning an anticipated leave request, but did not submit anything further, and his application for leave (to the extent there was one) was denied.  (Sanabria Decl., Ex. E.)  In July 2007, Plaintiff submitted a request for leave, citing "chronic and acute pain syndrome" lasting anywhere between "fifteen minutes

---

[3] Page numbers for Sanabria Declaration are those generated by the Electronic Case Filing System.

and thirty days." (Sanbria Decl., Ex. D at 2.) This request was denied because Plaintiff did not provide the anticipated frequency and duration for this condition. (Sanabria Decl., Ex. D at 1.) On May 14, 2010, Plaintiff requsted FMLA leave for an absence on May 11, 2010. (Sanabria Decl., Ex. B.) The request was denied due to a lack of supporting documentation. (Sanabria. Decl., Ex. B.)

In May 2010, Plaintiff was issued a "Letter of Warning" based upon his repeated absence from work. (Leonardo Decl., Ex. I.) The letter explained that Plaintiff had missed 192 hours of work between January and May of 2010, and that future absenteeism would result in further disciplinary action. (Leonardo Decl., Ex. I.)

The Letter of Warning was authored by Plaintiff's supervisor, Lorraine Kabacinski. According to Plaintiff, Kabacinski held a personal grudge against him. Plaintiff claims Kabacinski is "nuts," and that she picked on and harassed him. (Pl.'s Dep. 56:10-13, 66:2-6.) Although his recollection of specific instances of her mistreatment is vague, Plaintiff describes one instance where he forgot to punch in for his shift and Kabacinski incorrectly accused him of being late, (Pl.'s Dep. 60:18-62:4), and another instance where Kabacinski accused Plaintiff of not sorting the mail properly. (Pl.'s Dep. 66:10-17.) Aside from the 2010 Letter of Warning, Plaintiff does not

recall any instance where Kabacinski formally wrote him up, docked his hours, or otherwise affected his employment.

Plaintiff filed his complaint with the EEOC on September 7, 2010. (Leonardo Decl., Ex. B at 1.) In his EEOC complaint, Plaintiff alleged that he was discriminated against due to his cervical injury when he was (1) issued the Letter of Warning (2) denied FMLA leave, (3) assigned reduced hours and (4) forced to work outside his restrictions. (Leonardo Decl., Ex. B.) The EEOC entered judgment in favor of the Defendant on February 5, 2011. (Leonardo Decl., Ex. G at 10.)

Meanwhile, Plaintiff continued to lodge incomplete or otherwise deficient requests for FMLA leave. On April 7, 2011, Plaintiff requested FMLA leave for April 7, April 18, and April 29-30. (Sanabria Decl., Ex. A.) In support of his application, Plaintiff submitted a note from his doctor (forward-dated to April 19, 2011) that was incomplete. (See Sanabria Decl., Ex. A at 9-12.) Plaintiff was asked to resubmit his paperwork with the requested documentation by April 27, 2011, and his request for leave was denied when he failed to do so. (Sanabria Decl. Ex. A.) Later, in January 2012, Plaintiff requested FMLA leave for a nearly month-long absence, but he did not provide any documentation, and the request was therefore denied. (Pelzer-Sheppard Decl., Docket Entry 29, Ex. A.) Other times, Plaintiff submitted documentation from his doctor describing certain restrictions, but requested no

5

time off.  The FMLA office repeatedly informed him that such submissions were premature.  (Sanabria Decl., Exs. C, D.)

In May 2012, Plaintiff and Defendant entered into a "Last Chance Agreement," whereby Plaintiff was given one final opportunity to retain his employment.  (Leonardo Decl., Ex. H.) He was subsequently terminated, and his termination is the subject of a separate grievance proceeding.  At a status conference on March 21, 2014, Plaintiff informed the Court that his employment has been reinstated.

## DISCUSSION

### I.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202, 211 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1611, 26 L. Ed. 2d 142, 162 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2512, 91 L. Ed. 2d at 213-14. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256, 106 S. Ct. at 2514, 91 L. Ed. 2d at 217). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

II. Disability Discrimination

Discrimination claims brought under the Rehabilitation Act, like claims brought pursuant to Title VII, are analyzed under the burden-shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Sista v. CDC Ixis N. Am., Inc., 445

F.3d 161, 169 (2d Cir. 2006); see also Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008); Carby v. Holder, No. 11-CV-5775, 2013 WL 3481722, at *8 (S.D.N.Y. July 10, 2013).  That framework requires a plaintiff to first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Holcomb, 521 F.3d at 138.  Once the defendant provides such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citations omitted).

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that "(1) he is an 'individual with a disability,' (2) he was 'otherwise qualified' for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds." D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir. 1998).

Plaintiff alleges that he was discriminated against due to his cervical injury when he was (1) issued the Letter of Warning

(2) denied FMLA leave, (3) assigned reduced hours, and (4) forced to work outside his restrictions.[4]

Assuming, arguendo, that Plaintiff (1) is disabled as defined under the Rehabilitation Act, (2) was qualified for his job, and (3) has suffered an adverse action, Plaintiff has failed to state a prima facie case of disability discrimination. His claim fails because the record is devoid of _any_ facts suggesting _any_ connection between his disability and the adverse actions alleged. Plaintiff's deposition testimony acknowledges as much; it is replete with allegations that his superiors mistreated everyone, and that any specific animus toward Plaintiff was for personal reasons. For example, Plaintiff testified:

> A.  Yes, at this point in time everything that they were doing to me seemed to be of a personal nature . . . .
>
> They targeted me.  Not for nothing, but, like I believe, that for some reason certain people who don't know me are intimidated by me just be my presence.
>
> . . .

---

[4] To the extent Plaintiff's Complaint may be read to allege other adverse actions, Plaintiff has not exhausted his administrative remedies with regard to those claims, and they are therefore not properly before this Court.  See, e.g., Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." (internal quotation marks and citation omitted)).

> Q. You are not claiming that its because of your age, because of a gender, because of your race, or anything like that?
>
> A. No, not at all.

(Pl.'s Dep. 35:25-37:20.) Elsewhere, Plaintiff testified that his supervisor, Lorraine Kabacinski "threatens everyone," and that everyone complained about her. (Pl.'s Dep. 55:14-16, 59:15-17; 121:25-122:8.) Plaintiff testified that other superiors mistreated him because "they just did not like [him], . . . personal reasons." (Pl.'s Dep. 15:20-25.) Counsel even asked Plaintiff if he felt mistreated "[b]ecause you have a disability," to which Plaintiff responded, "Again, because--no, because for some reason the guy has something against me." (Pl.'s Dep. 113:24-114:2.)

Plaintiff's testimony offers no indication that he suffered any mistreatment due to his disability, nor does he offer evidence that any non-disabled person was treated differently. In short, no reasonable juror could find in the record any facts on which to base an inference of discriminatory animus. See, e.g., Falso v. SPG Direct, 353 F. App'x 662, 664 (2d Cir. 2009) (affirming summary judgment because plaintiff failed to show that the adverse action occurred because of his disability); Mastrolillo v. Connecticut, 352 F. App'x 472, 474 (2d Cir. 2009) (same); Fox v. State Univ. of New York, 686 F. Supp. 2d 225, 234 (E.D.N.Y. 2010) (dismissing claims due to the lack of any "direct

evidence that any of [the] alleged mistreatment was the result of [plaintiff's] disability, and the plaintiff names no similarly situated non-disabled comparators who were treated differently").

Plaintiff might argue that requiring him to perform work beyond his restrictions is so related to his disability that one may fairly infer a discriminatory animus on those facts alone. Such an argument is belied, however, by the fact that Plaintiff never told his superiors that he was performing work outside of his restrictions. (Pl.'s Dep. 24:7-14, 25:5-8 ("Q. Did there come a time where you made a request to the post office to follow your doctor's restrictions? A. No.").) Plaintiff's testimony that he sometimes violated his doctor's restrictions--by, for example, reaching over his head or lifting something heavy-- without any indication that his employer even <u>knew</u> he was violating them is plainly insufficient.[5]

Accordingly, because the record is devoid of any evidence supporting an inference that Plaintiff suffered <u>any</u> mistreatment due to his alleged disability, summary judgment is appropriate.[6]

---

[5] Indeed, evidence in the record suggests that whenever Plaintiff did make his employer aware of his restrictions, his employer offered him a light duty assignment. (<u>See</u> Pl.'s Dep. 92:4-93:16 (discussing Plaintiff's acceptance of 2006, 2009, and 2010 offers of light duty assignments).)

[6] In his opposition, Plaintiff alleges for the first time that he was mistreated ever since he became an editor of a paper

III. <u>Retaliation</u>

To establish a prima facie case of retaliation, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 282-83 (2d Cir. 2001).

Presumably, Plaintiff's retaliation claim arises from action taken allegedly as a result of his filing an EEOC complaint. Plaintiff, however, has offered little more than vague, conclusory allegations of retaliation. When asked to specify what adverse actions he considered to be retaliatory, Plaintiff explained, "I don't have them all off the top of my head. All I know is that anything done by Lorraine which I already mentioned. And I am sure there was other things. I just can't remember them." (Pl.'s Dep. 88:8-12.) Even assuming that Plaintiff could state an adverse action with such a vague recollection, Plaintiff does not dispute

---

published by his union. The Court does not consider this statement. Plaintiff's prior papers are devoid of <u>any</u> suggestion that he was targeted for exercising his free speech, Plaintiff was deposed twice and questioned countless times about his suspected reasons for his alleged maltreatment; he had ample opportunity prior to and during discovery to raise this issue, and he remained silent. <u>See</u> <u>Hayes v. N.Y.C. Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").

that his mistreatment began before he filed his EEO complaint. Thus, no inference of discriminatory animus can be drawn. <u>See, e.g.</u>, <u>Tomasino v. St. John's Univ.</u>, 476 F. App'x 923, 925 (2d Cir. 2012) (affirming dismissal of retaliation claim where plaintiff's termination was the result of progressive discipline prior to her engaging in the protected activity).

Accordingly, because Plaintiff has failed to adequately identify what acts he considers to be retaliatory, and because, in any event, Plaintiff has not offered <u>any</u> facts supporting an inference of retaliatory intent, summary judgment on Plaintiff's retaliation claim is appropriate.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket Entry 26) is GRANTED in its entirety. The Clerk of the Court is directed to enter judgment consistent with this Memorandum and Order and to mark this case as CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September   18   , 2015
           Central Islip, New York